UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ALEXINA SIMON,

                                  Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE
DOUGLAS LEE, SERGEANT EVELYN
ALLEGRE, ADA FRANCIS LONGOBARDI,

                                  Defendants.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**

09-CV-1302 (ENV) (RER)

**VITALIANO, D.J.**

      Plaintiff Alexina Simon commenced this action against the City of New York, Detective Douglas Lee, Sergeant Evelyn Allegre, and Assistant District Attorney Francis Longobardi, alleging violations of her civil rights. On May 14, 2010, Simon filed a motion to amend her complaint a second time, which the Court referred to Magistrate Judge Ramon E. Reyes for a Report and Recommendation ("R&R"). On January 28, 2011, the Court adopted Judge Reyes's R&R in its entirety, which, among other things, concluded that Simon's claims were "precluded by absolute or qualified immunity." Simon v. City of New York, 09-CV-1302, 2011 U.S. Dist. LEXIS 9515, at *26 (E.D.N.Y. Jan. 3, 2011). Defendants have now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For essentially the same reasons set forth in Judge Reyes's R&R, the Court finds that plaintiff's claims fail as a matter of law and, accordingly, summary judgment is granted in favor of defendants.

## I.   BACKGROUND

      At the start of this episode, plaintiff was identified by the Queens County District Attorney's Office ("Queens DA") as a person of interest in the theft of a Shantell McKinnies' vehicle. When McKinnies reported her vehicle missing, she also named "Alexandra Griffin" as

1

the last person to see the vehicle. When police officers tried to locate "Alexandra Griffin," they were unsuccessful. However, plaintiff herself telephoned the NYPD on January 16, 2008 in connection with the missing car complaint, informing that her name was Alexandra Simon, not Griffin, and that she was perplexed by McKinnies's allegation regarding her missing vehicle. On July 17, 2008, the Queens DA failed in its attempt to serve plaintiff with a subpoena to appear to provide information and give testimony before a grand jury.

About three weeks later, on August 8, 2008, Francis Longobardi, an Assistant District Attorney, filed both an application for a material witness order naming Simon and a warrant for her arrest, which was issued on the same day. Simon alleges that, on August 11 and 12, 2008, certain officers, who were purportedly "assigned to the New York Police Department's 102nd Precinct," unlawfully arrested and detained her. She alleges that the officers told her that they had a warrant for her arrest, took her into custody, and transported her to criminal court. Plaintiff claims that the officers interrogated her without an attorney and deprived her of food, drink, and medication. She filed suit on March 27, 2009, pursuant to 42 U.S.C. § 1983, alleging that the police officers she sued had unlawfully arrested and detained her in August 2008.

Defendants have a very different version of the story. They deny that Simon was "arrested" on either August 11 or 12; instead, they say, she was "picked up by two investigators employed by the Queens County DA's Office, and [] then transported to the Queens DA's Office, in accordance with the material witness order." On August 11, 2008, the Queens DA investigators met plaintiff at her place of business and escorted her to the office pursuant to the material witness order. Plaintiff was returned home on August 11, 2008, and was met by the same investigators at her home the next day, August 12, 2008. Again, plaintiff accompanied the investigators to the Queens DA's office and returned home later that same day.

## II. STANDARD OF REVIEW

A motion for summary judgment is granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is thus not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). Accordingly, the moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see, e.g., Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005), and the Court must resolve all ambiguities in the evidence and draw all permissible factual inferences in favor of the party opposing the motion. See, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004); Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir. 1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not then rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of . . . the

non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23. If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).

### III. DISCUSSION

#### A. Absolute and Qualified Immunity

1. The Prosecutor's Actions

In Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984 (1976), the Supreme Court first recognized the absolute immunity of prosecutors to § 1983 suits, holding that "a state prosecuting attorney [acting] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit. "Imbler defined the scope of prosecutorial immunity not by the identity of the actor, but by reference to the 'function' performed." Warney v. Monroe Cnty., 587 F.3d 113, 120-121 (2d Cir. 2009) (citing Imbler, 424 U.S. at 430); see also Hill v. City of New York, 45 F.3d 653, 660 (2d Cir. 1995). In that respect, "those acts that are 'intimately associated with the judicial phase of the criminal process' would be shielded by absolute immunity, but not 'those aspects of the prosecutors responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate. Id. (citing Imbler, at 430-31). The cases therefore "draw a line between the investigative and administrative functions of prosecutors, which are not protected by absolute immunity, and the advocacy functions of prosecutors, which are so protected." Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001). Generally, it is "unhelpful to ascertain the prosecutors' functional role by isolating each specific act done or not done . . . [because] a prosecutor's function depends chiefly on whether there is

pending or in preparation a court proceeding in which the prosecutor acts as an advocate." Warney, 587 F.3d at 123.

Actions taken prior to the start of a formal legal proceeding are not entitled to absolute immunity because prior to the start of such a formal proceeding, the prosecutor has not stepped into his role as an advocate. See, e.g., Burns v. Reed, 500 U.S. 478, 493, 111 S. Ct. 1934, 1943 (1991) ("advising the police during the investigative stage of a case that they have probable cause to arrest" is not advocacy and is only entitled to qualified immunity); Hill, 45 F.3d at 661 ("investigation of charges of child abuse and the removal of a child from its parents' custody is accorded only qualified protection"). Absolute immunity also does not apply "when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." Van de Kamp v. Goldstein, 129 S. Ct. 855, 861 (2009) (citations omitted). Absolute immunity does apply "when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." Id.

Simon alleges that Longobardi presented false and misleading information in his judicial application for the material witness warrant. She focuses on the fact that the ADA submitted a sworn affidavit in support of the application, thus placing himself, she argues, in the role of an investigator or witness. On this point, Kalina v. Fletcher, 522 U.S. 118 (1997), is instructive. There, the Supreme Court held that a prosecutor's "activities in connection with the preparation and filing of two of . . . three charging documents—the information and the motion for an arrest warrant—[were] protected by absolute immunity" but "her act in personally attesting to the truth of the averments in [a] certification" was not protected as she was "acting as a complaining

5

witness rather than a lawyer when she executed the certification 'under penalty of perjury.'" Id. at 129. The Court noted:

> Although the law required that document to be sworn or certified under penalty of perjury, neither federal nor state law made it necessary for the prosecutor to make that certification. In doing so, [the prosecutor] performed an act that any competent witness might have performed.
> . . .
> Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required "Oath or affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.

Id. at 129-31. This holding is clearly significant. Applied here, however, the outcome differs.

The New York statutory scheme for material witness warrants differs markedly from the Washington state provisions for arrest warrants at issue in Kalina. In New York, a material witness warrant may be issued for a prosecution or defense witness only upon a showing that the witness possesses material information and will not be amenable or responsive to a judicial subpoena. See N.Y. Crim. Proc. Law § 620.10. Unlike in Kalina, though, where "neither federal nor state law made it necessary for the prosecutor to make th[e] certification" in support of the arrest warrant, 522 U.S. at 129, New York law must be read to require that a material witness application be sworn to by the prosecutor or defense counsel personally:

> 1. A proceeding to adjudge a person a material witness must be commenced by application to the appropriate court, made in writing and subscribed and *sworn to by the applicant*, demonstrating reasonable cause to believe the existence of facts . . . warranting the adjudication of such person as a material witness."

N.Y. Crim. Proc. Law §620.30(a) (emphasis added). In other words, it is not the case that "any competent witness" may swear to the truth of the application. Cf. Kalina, 522 U.S. at 129-30.

Rather, New York, by statute, and the practice under it, appears to have made performing this function the sole responsibility of the prosecutor or defense counsel and no one else. As Judge Reyes noted in his R&R,

> the New York statute authorizing the issuance of material witness orders provides that "[a] material witness order may be issued upon the ground that there is reasonable cause to believe that a person whom *the people* or the defendant desire to call as a witness in a pending criminal action (a) possesses information material to the determination of such action . . . ." In New York, "the People" are represented by local district attorneys, not police departments. Moreover, a material witness order can only be issued after a criminal proceeding has begun.

Simon, 2011 U.S. Dist. LEXIS 9515, at *30-31. In short, the proof only the advocate can proffer is required for issuance of the order and warrant.

Analytically, when procuring a material witness warrant, a prosecutor is making a strategic litigation decision about which witnesses will be necessary to present his case. This is undeniably the type of function contemplated in Imbler that is "intimately associated with the judicial phase of the criminal process" and tied to the prosecutor's role as an advocate. Indeed, it is difficult to imagine, as Simon suggests, that some other person would be the one to apply for a material witness warrant. Police officers do not determine which witnesses are required for the prosecution of a case, much less are they competent to swear to a court that a specific witness is essential to the proof. For that very reason, the prosecutors who make those decisions are not acting in an investigatory capacity or performing the role of a complaining witness—they are expressing an advocate's judgment. Therefore, insofar as New York law necessitates that prosecutors perform this role as part of their duties in pursuing criminal actions, there is a practical reason to shield them completely from liability. Kalina, 522 U.S. at 125 (noting the interests "in protecting the prosecutor from harassing litigation that would divert his time and

attention from his official duties and . . . in enabling him to exercise independent judgment when deciding which suits to bring and in conducting them in court") (quotations omitted); Imbler, 424 U.S. at 427 (noting that potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system").

Moreover, it is irrelevant to a justification for immunity whether Longobardi was mistaken or unwittingly provided false information while applying for the material witness warrant. This relates precisely to the core justification for the immunity doctrine—a fearless pursuit of justice does not admit to metaphysical certitude. As the Imbler Court noted:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

424 U.S. at 424-25. Since a prosecutor's actions in pursuing a criminal prosecution, including deciding which witnesses are indispensible, fall squarely within the "advocacy" category, Longobardi's actions in procuring the material witness warrant are entitled to absolute immunity.

2. The Investigators' Actions

Simon also brings claims against the officers who "arrested" her, alleging that they were aware of the fact that Longobardi presented false information to procure the warrant. Absolute immunity applies "not only [to] officials performing discretionary acts of a judicial nature . . . but also [to] individual employees who assist such an official and who act under that official's direction in performing functions closely tied to the judicial process." Hill, 45 F.3d at 660. When law enforcement officials perform investigative functions however, and therefore act "before [the prosecutor] has probable cause to have anyone arrested," they are protected only by

qualified immunity. Buckley v. Fitzsimmons, 509 U.S. 259 (1993). Here, based on Longobardi's application, an appropriate state court adjudged Simon a material witness in the prosecution of a felony complaint. The investigators, who were employed by the Queens DA, were instructed by Longobardi to take Simon into their custody in accordance with the court's warrant. These actions, which were executed under the direction of the prosecutor in the course of performing functions closely tied to the judicial process as opposed to police functions, are also protected by absolute immunity.

What's more, if not protected by absolute immunity, the DA investigators are certainly protected by qualified immunity. It is beyond dispute that individuals are protected by qualified immunity so long as "(1) their conduct does not violate clearly established constitutional rights, or (2) [it] was objectively reasonable for them to believe their acts did not violate those rights." Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000) (quoting Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996)). Here, the investigators, "at the time of the events in question . . . lacked a legal basis upon which [they] could conclude that [their] actions would violate [plaintiff's] substantive due process rights," and they are therefore entitled to qualified immunity. Southerland v. City of New York, No. 07-cv-4449, 2011 WL 2279186, at *19 (2d Cir. June 10, 2011). Certainly, an officer who reasonably relies on a facially valid warrant is generally entitled to qualified immunity. See Simms v. Village of Albion, 115 F.3d 1098, 1109 (2d Cir. 1997).[1] Whether protected by absolute or qualified immunity, it is clear that Simon cannot

---

[1] At a minimum, Longobardi too would be shielded from suit by qualified immunity. The DA's office knew that (a) the victim had previously identified a specific individual as the last person to see the stolen vehicle, (b) plaintiff had self-identified as the individual named by the original complainant as having information about the stolen car (though plaintiff had denied having any such information), and (c) plaintiff had not been successfully served with a subpoena despite efforts to do so. There is no doubt, on these facts, that Longobardi's actions—based on his legal

sustain an action against the investigators who effectuated her detention pursuant to the direction of a prosecutor and a facially valid material witness warrant.[2]

## B. <u>Municipal Liability</u>

Finally, Simon also brings a claim against the City of New York. At the outset, there is no evidence in the record that the investigators who took Simon into custody were police officers. Although she alleges that she was arrested by two members of the 102nd Precinct, it appears that the investigators who detained her were actually employed by the Queens DA, not the City of New York directly. Governance aside, however, the City of New York funds the Queens DA's office. For purposes of this motion then, it is assumed that the City is the proper party.

In any event, and more importantly, Simon has not pled a claim under § 1983 against the City, or any other governmental entity, that can survive the instant motion. First off, Simon's claim that New York City is liable under the doctrine of respondeat superior for the acts of the prosecutor and individual officers is not cognizable under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978). It is well established that "[m]unicipal liability in actions brought under § 1983 may not be premised on respondeat superior." <u>McGrath v. Nassau Health Care Corp.</u>, 217 F.Supp.2d 319, 330 (E.D.N.Y. 2002) (citing <u>Ciraolo v. City of New York</u>, 216 F.3d 236, 242 (2d Cir.2000); <u>Clue v. Johnson</u>, 179 F.3d 57, 62 (2d Cir.1999); <u>Schwimmer v. Kaladjian</u>, 164 F.3d 619 (Table), 1998 WL 708818, at *3 (2d Cir. 1998)).

---

conclusion that he could only obtain plaintiff's testimony as a material witness with a material witness warrant—were objectively reasonable at the very least.

[2] Defendants also argue that certain errata sheets filed by plaintiff seeking to amend her deposition answers are improper and should not be considered on the instant motion. But the factual issues identified in the errata sheets are irrelevant. As discussed above, this lawsuit is barred by absolute and/or qualified immunity. The dispute over the errata sheets is academic.

Furthermore, a municipality "cannot be held liable under section 1983 unless a municipal policy or custom caused the constitutional injury' to the plaintiff." Kampfer v. Cnty. of Fulton, 107 F.3d 3 (Table), 1997 WL 48990, at *1 (2d Cir. 1997) (quoting Monell, 436 U.S. at 694). See, e.g., Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ("[T]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused [the] injuries."). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436 (1985). Simon's claim that New York City was negligent in its hiring and retention of the District Attorney (who is independently elected) and the assistants and investigators employed by his office is nothing but a conclusory allegation without any spec of factual support. "To state a § 1983 claim against a municipality, 'plaintiffs must provide more than conclusory allegations; they must add specific factual support to show the existence of a pattern.'" Swinton v. City of New York, No. 08 CV 3778, 2011 WL 1158430, at *5 (E.D.N.Y. March 28, 2011). (quoting McCray v. City of New York, No. 03 Civ. 9685, 2007 WL 4352748, at *27 (S.D.N.Y.2007)). Simon has failed to do that, and, accordingly, her Monell claim must be dismissed.[3]

---

[3] Defendants have also moved for sanctions. At all times relevant, the interpretation and impact of Kalina as it relates to the issues framed here were not finally determined in the Second Circuit and, as a consequence, sanctions are inappropriate. The sanctions motion is denied.

## IV. CONCLUSION

For the foregoing reasons, defendants' summary judgment motion is granted and the case is dismissed with prejudice. The request for sanctions against plaintiff is denied. The Clerk is directed to enter judgment in accordance with this memorandum and order and to close the case.

**SO ORDERED.**

Dated: Brooklyn, New York
October 7, 2011

s/ ENV

ERIC N. VITALIANO
United States District Judge