UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALEXINA SIMON,

                      Plaintiff,

      -against-

CITY OF NEW YORK, DETECTIVE DOUGLAS
LEE, SERGEANT EVELYN ALEGRE, and ADA
FRANCIS LONGOBARDI,

                      Defendants.
-----------------------------------------------------------------x

MEMORANDUM & ORDER
09-CV-1302 (ENV)(RER)

VITALIANO, D.J.

On March 27, 2009, plaintiff Alexina Simon ("Simon") commenced this § 1983 action against defendants the City of New York, New York City Police Department ("NYPD") Detective Douglas Lee, Sergeant Evelyn Alegre, and Queens County Assistant District Attorney ("ADA") Francis Longobardi. On October 19, 2011, summary judgment was granted for defendants on the ground of absolute immunity, and the case was dismissed. Plaintiff appealed. The Second Circuit vacated and remanded.[1] *See Simon v. City of New York*, 727 F.3d 167, 174 (2d Cir. 2013). The court of appeals pointedly noted, however, that it had made no finding as to qualified immunity. *Id.* That open question is now presented on defendants' renewed motion for summary judgment, as they advance qualified immunity as the principal ground for relief. For the reasons set forth below, defendants' motion is granted.

---

[1] The Second Circuit, however, did not disturb the dismissal of the City of New York as a defendant, which was based on Simon's failure to state a cognizable claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). *See Simon v. City of New York*, 819 F. Supp. 2d 145, 152-53 (E.D.N.Y. 2011). Accordingly, the only claims remaining are those sounding in false arrest and/or false imprisonment under New York state and federal law. *See Simon*, 727 F.3d at 170 n.3. All other claims have been withdrawn by plaintiff and are dismissed. *See* Dkt. No. 58 at 4 n.3.

1

## Background

Most of the relevant facts of this long-lived case, and the controlling standard of review, have already been described in prior memoranda and orders. *See Simon v. City of New York*, 09-cv-1302, 2011 WL 317975, at *1-2 (E.D.N.Y. Jan. 3, 2011); *Simon*, 819 F. Supp. 2d at 147-48; *Simon*, 727 F.3d at 169-70. Therefore, only those facts relevant to this order will be recounted. All reasonable inferences are drawn, as they must be, in favor of plaintiff as the non-moving party.[2] *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

The origins of this case stem from an investigation, led by ADA Longobardi, into whether non-party NYPD Officer Shantell McKinnies falsely reported that her car was stolen. Simon Dep., Dkt. No. 127-2, at 41-42. Officer McKinnies alleged that the last person to see her car was a friend, whom she identified as "Alexandra Griffin." Longobardi Dep., Dkt. No. 127-5, at 32-33. According to police records, when "Alexandra Griffin" was first contacted by members of the NYPD on January 16, 2008, she provided limited information – namely that she had been out with McKinnies on the night the car was allegedly stolen and that a conflict ensued thereafter. Dkt. No. 124-1 at AS 16; Def. 56.1 Stmt., Dkt. No. 123 ¶¶ 5-9. Griffin then began

---

[2] The Court held oral argument on December 20, 2016. *See* 12/20/2016 Oral Arg. Tr., Dkt. No. 133. Defendants' position at that hearing and in their brief, that it is the "plaintiff's testimony" – and the plaintiff's testimony only – that governs on a motion for summary judgment is incorrect as a matter of law. *See id.* at 38. While it is true that a party cannot "successfully oppose summary judgment on the basis of an unreasonable view of the facts[,]" *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (citation omitted), the Court finds nothing unreasonable about considering and crediting the consistent testimony of Detective Lee, Sergeant Alegre, and ADA Longobardi as well. To the extent plaintiff's own testimony conflicts with defendants', the Court will simply "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against [defendants][,]" so long as that construction does not present an unreasonable view of the facts. *Id.* (citing *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

crying and promptly hung up the telephone. Dkt. No. 124-1 at AS 16. In a follow-up conversation, "Alexandra Griffin" informed the officer that she went by the name "Alexandra Simon." *Id.* When detectives went to Alexandra Griffin/Simon's home at 444 Greene Avenue in Brooklyn for an in-person meeting, they were reportedly met with an "uncooperative person." *Id.*; Def. 56.1 Stmt. ¶ 12.

Confusion ensued when investigators discovered that Alexandra Griffin/Simon lived at a home registered to plaintiff, *Alexina* Simon. Longobardi Dep. at 62. Only later would investigators come to realize that Alexina Simon and Alexandra Griffin/Simon shared a residence because they were mother and daughter, and that the similarity of their first names was a coincidence. At the time, however, the similarity of the names and the shared address led investigators to believe that Alexina Simon was, in fact, the witness they were after. *Id.* at 60-62.

To that end, ADA Longobardi sought a material witness order and material witness arrest warrant as to Alexina Simon. The application, as required, set out the attempts that had been made to get in contact with Alexina Simon, including the aforementioned phone calls and subpoenas that had allegedly been delivered to 444 Greene Avenue. Dkt. No. 124-2. The application also described how ADA Longobardi had "spoke[n] with someone who purported to be the witness on the telephone[,]" and that the witness conveyed that she was not legally required to speak with the District Attorney's Office, that, at this point, she believed to be harassing her. Dkt. No. 124-2 at 4.

In an effort to end the recalcitrance of a perceived important prosecution witness, on August 8, 2008, a material witness order and material witness arrest warrant were issued for Alexina Simon. Dkt. No. 127-14. In pertinent part, the material witness arrest warrant provided that:

> [ANY POLICE OFFICER IN THE STATE OF NEW YORK is], .
> . . COMMANDED forthwith to take the above-named ALEXINA
> SIMON into custody within the State of New York and bring her
> before this Court in order that a proceeding may be conducted to
> determine whether she is to be adjudged a material witness.

Dkt. No 127-14 (capitalization in original). The parties do not contest the fact that the order was sought in good faith.

Detective Lee and Sergeant Alegre were tasked with executing this warrant. Accordingly, on August 11, 2008, around 10:00 a.m. or 11:00 a.m., they "arrested" plaintiff at her place of employment and took her to the Queens County Courthouse. Alegre Dep., Dkt. No. 127-4, at 116; Lee Dep., Dkt. No. 127-3, at 85-86, 87-88.

The investigatory plan would soon unravel. At some point during the questioning of Simon, it came to light that she was not the witness whom they had originally sought. Though there is not perfect clarity as to when and how on August 11 that misidentification was revealed to each defendant, Detective Lee and Sergeant Alegre appear to be the first to realize that Simon was not the person they thought she was. Detective Lee testified that, upon arriving at the courthouse to meet with ADA Longobardi, Simon told Lee that "The person you're looking for is my daughter[,]" and that Lee conveyed this information to Sergeant Alegre. Lee Dep. at 91; *see also* Alegre Dep. at 141. Around the same time, while questioning Simon in a hallway at the courthouse, ADA Longobardi also realized that they "wanted [Simon's] daughter and not her." Longobardi Dep. at 112. Accordingly, Sergeant Alegre testified that the warrant was never "executed." *See* Alegre Dep. at 148-49, 252-53, 255-56; Longobardi Dep. at 124-25. After these events had unfolded, around noon, Detective Lee and Sergeant Alegre, at the direction of ADA Longobardi, then took an unrestrained Simon to their office, approximately two-and-a-half blocks from the courthouse. Lee Dep. at 95; Alegre Dep. at 156-57.

4

This is where the parties' accounts begin to diverge in substantial ways. Detective Lee and Sergeant Alegre are in significant agreement that Simon again spoke with ADA Longobardi at their offices and that she was taken home soon, *i.e.*, at some point later that afternoon. *See* Lee Dep. at 99, 102 (1:00 p.m.); Alegre Dep. at 165 (between 2:00 p.m. and 3:00 p.m.). Simon on the other hand claims that she did not arrive home until after 8:00 that night. Simon. Dep. at 57.

Notwithstanding this discrepancy, though, both sides agree that Simon returned to the DA's offices on the following day, August 12. Simon contends, however, that, after the first day of questioning concluded, she was told she had no choice but to return the next day. Simon Dep. at 53. Defendants, on the other hand, claim that Simon voluntarily agreed to return. Longobardi Dep. at 120, 123-25; Lee Dep. at 113; Alegre Dep. at 132. In sum, although there is no dispute that on August 12 the officers came in their car to Simon's home and brought her back to their office, Simon claims that the officers stated she had to "come to answer more question[,]" Simon Dep. at 67, whereas the officers counter that they came to Simon's house purely as a courtesy, in recognition of her having agreed to return with her daughter, Longobardi Dep. at 120. In any case, it is clear that Simon, without her daughter, accompanied Detective Lee and Sergeant Alegre to their office once again. Simon Dep. at 77; Lee Dep. at 135. The unrestrained Simon was placed in a room (what Detective Lee described as the "reception office").[3] Simon Dep. at 71-72; Lee Dep. at 135-36. Simon recalls being asked questions by the officers as she waited, Simon Dep. at 72, but states that she could not recall whether she spoke with ADA Longobardi

---

[3] Nothing in the decision suggests that the Court has made a finding that Simon was "detained" against her will, though it is assumed she was for purposes of this motion. It is, however, undisputed that Simon was not handcuffed, photographed, fingerprinted, or placed in a cell. *See* Simon Dep. at 49, 71. Nothing in the record suggests that the officers took any precautions to ensure their personal safety or the safety of others from any actions Simon might take.

that second day – though she "could have." Simon Dep. at 74. According to the officers and the prosecutor, however, at some point, she was taken into an office to speak with ADA Longobardi; at some time following her conversation with him, she returned home. *See* Lee Dep. at 136; Alegre Dep. at 203; Longobardi Dep. at 136. Simon claims that she was kept for eight hours, even though ADA Longobardi stated that he only spoke to Simon that day for "[m]aybe five minutes."[4] Longobardi Dep. at 136.

## Discussion

The objective "'of § 1983 is to deter public officials from violating citizens' federal rights and to compensate victims of such official wrongdoing.'" *Aupperlee v. Coughlin*, 97 F. Supp. 2d 336, 341 (E.D.N.Y. 2000) (quoting *Weaver v. Brenner*, 40 F.3d 527, 532 (2d Cir. 1994)). It is, conversely, well-established that government officials performing "discretionary functions" are entitled to invoke the doctrine of qualified immunity when faced with a § 1983 action.[5] *Harlow v. Fitzgerald*, 457 U.S. 800, 816-18, 102 S. Ct. 2727, 2737-38, 73 L. Ed. 2d 396 (1982). This doctrine shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)

---

[4] Oddly, a subpoena was issued in plaintiff's name on August 12, 2008 that commanded her to achieve the temporally impossible and appear before a grand jury on Monday, August 11, 2008 and Tuesday, August 12, 2008. Dkt. No. 127-15. ADA Longobardi asserts that it was given to plaintiff to excuse her absence from work on those days. *See* Longobardi Dep. at 151-53. On the totality of the circumstances, the backdated subpoena is compellingly consistent with ADA Longobardi's account.

[5] Plaintiff's argument that the defendants were not performing "discretionary" functions because "[n]othing in the arrest warrant authorized Defendants to exercise any discretion in arresting/seizing the Plaintiff on either date", Dkt. No. 129 at 15, is without merit. *See e.g.*, *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) ("[T]heir actions were the functional equivalent of police officers' making arrests in criminal cases, which are a classic example of actions entitled to qualified [immunity] . . . .").

(citation omitted), thus serving "to protect law enforcement officials from liability for reasonable errors of judgment." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 255 (E.D.N.Y. 2000).

A determinative question in many cases, then, is "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (citation omitted) (emphasis in original). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) (citation omitted). "[A] clearly established right is not identified by reference to how courts or lawyers might have understood the state of the law[;] [n]or is it sufficient for a right to have been established generally or in a context distinct from that at issue." *Barboza v. D'Agata*, No. 16-258-CV, 2017 WL 214563, at *2 (2d Cir. Jan. 18, 2017). Instead, "[e]ven if the right at issue was clearly established *in certain respects*, . . . an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue *in its particular factual context*." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (emphasis added). Moreover, "if the law was not clearly established, it is irrelevant whether the defendant[s] intended to violate the plaintiff's constitutional rights" as "the official could not 'fairly be said to know that the law forbade conduct not previously identified as unlawful.'" *See* Sand *et al.*, Modern Federal Jury Instructions, Civil Instruction 87-86, Commentary (citing *Harlow*, 457 U.S. at 818) (internal quotations omitted).

In the last five years, the United States Supreme Court has repeatedly reminded lower courts of "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality[,]'" *see, e.g.*, *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149

(2011)), and that "clearly established law must be 'particularized' to the facts of [each] case." *White*, 137 S. Ct. at 552 (citation omitted); *see also id.* ("The panel majority misunderstood the 'clearly established' analysis: It failed to identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment.").

An officer may also establish qualified immunity by showing that, "notwithstanding a violation of a clearly established constitutional right, it was objectively reasonable for him to believe his actions did not violate this right." *Johnson v. City of New York*, 940 F. Supp. 631, 636 (S.D.N.Y. 1996) (citing *Robison v. Via*, 821 F.2d 913 (2d Cir. 1987)). An official's conduct in this context is "objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995); *see Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986). In sum, "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Lennon*, 66 F.3d at 421; *see also Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 80 (2d Cir. 1994). Furthermore, it must also be remembered that, the issue of qualified immunity, unless its resolution is made impossible by a genuine dispute of material fact, "should be decided upon a motion for summary judgment[.]" *Aupperlee*, 97 F. Supp. 2d at 341.

I. The Clearly Established Standard

Calling for an exercise of discretion in the approach to it, the first and foundational question to be addressed on this motion is whether the alleged violative nature of the officers' and ADA's conduct was clearly established in federal law at the time the conduct allegedly occurred. *See Pearson*, 555 U.S. at 236. Indeed, beginning with *Pearson*, "judges of the district

8

courts . . . [have been] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis [*i.e.*, the constitutional violation prong, or the clearly established prong] should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Here, Simon stumbles out of the box seeking, as she purports, to ground her unconstitutional detention claim in a violation of "clearly established" law. In a survey of Second Circuit and Supreme Court precedent up to and through August 2008, the Court has been unable to find a single case regarding the detention of a person whose actual name appears on a validly obtained material witness warrant, where it is later discovered that the material witness warrant was issued for the wrong person. Nor, more particularly, did that research return any cases establishing that, should the custodian learn that the person detained was not the person for whom the material witness warrant was sought, any continued questioning violates a constitutional right. Or, if situationally, it matters that, notwithstanding the fact that the detained person was not the person originally sought, the officers still believed her to have information potentially material to the investigation. Indeed, the peculiarity of this case centers on the reality that the person detained was the person *named* in the validly obtained material witness warrant and that she potentially had information relevant to the investigation, but that she was not the person who had the information that prompted the prosecutor to seek the warrant in the first place. Though essentially, defendants deny that Simon's questioning at the prosecutorial offices following the revelation that she was the mother Simon and not the daughter Simon was anything other than consensual,[6] that these other facts fairly characterize plaintiff's "detention" is

---

[6]  Discussion of the constitutionally appropriate manner of executing a material witness warrant must not mask the existence of a dispute over a fact which, if resolved, could also have

9

not genuinely disputed.

Indeed, the existence of "clearly established" law that would guide prosecutors and law enforcement officers to act reasonably in the context of executing a material witness warrant, as opposed to a "criminal suspect" warrant, is slim.[7] The dichotomous nature of the two types of arrest warrants lies in the fact that a material witness warrant is a ligation tool that a prosecutor or a defendant may seek for litigation purposes. *See* N.Y.C.P.L. §§ 620.20, 620.30; *cf. Flagler v. Trainor*, 663 F.3d 543, 548 (2d Cir. 2011) ("There are key differences between arrest warrants and material witness orders."). Here, ADA Longobardi successfully obtained it and was responsible for its use; Detective Lee and Sergeant Alegre, to the extent they brought Simon anywhere without her consent, may be said to have executed it.[8] Of course, probable cause to

---

proven dispositive of this claim. Specifically, the parties dispute whether Simon consented to accompanying the officers for questioning. *See Simon*, 727 F.3d at 170. Consent would render any disputes about the propriety of obtaining and then enforcing the material witness warrant immaterial.

[7] While *United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003) briefly confronts the reasonableness of detentions pursuant to material witness warrants, it does not explore the issue of executing a material witness warrant alongside claims of misidentification. In any event, the Court there found that Awadallah's detention for 20 days as a material witness was a constitutional use of the federal material witness statute. *Id.* at 63-64; *see also U. S. ex rel. Glinton v. Denno*, 339 F.2d 872, 876 (2d Cir. 1964) (prisoner's valid detention under a material witness statute did not become "unreasonable" even though discharge of grand jury resulted in technically illegal detention under state law).

[8] The motion papers frame a semantical roundabout regarding execution of a material witness warrant. It is undisputed that the officers presented either the material witness order or material witness warrant to Simon when they picked her up at her place of employment. *See* Simon Dep. at 35-36, 38-40; Lee Dep. at 70-71, 199-200; Alegre Dep. at 103-04, 133, 146-47. The material witness warrant, in its boilerplate terms, authorized the officers to take Simon into custody for the purposes of transporting her to a material witness proceeding. In line with those terms and, as discussed below, the flexible practices accompanying such proceedings, the officers testified that the warrant was not "executed" because Simon was never brought before the court for her adjudication. *See*, Alegre Dep. at 148-49, 252-53, 255-56. To the extent a material witness warrant tracks the form of a typical "criminal suspect" arrest warrant, however,

arrest for criminal conduct, a determination usually made by law enforcement officers, did not exist, which would have led to detention for reasons qualitatively different than those justifying the execution of a material witness warrant. Analytically, the reason for "criminal suspect" detention is hinged to an alleged wrong committed by the detainee. The only hinge for a detention on a material witness warrant is a litigation determination made by the prosecutor or, perhaps, at trial by defense counsel, who might be seeking to use such a warrant.

And yet, even if the legal principles governing "criminal suspect" arrest warrants were to be accepted as applicable, the guidance of those principles is still obscured in the haze created by these novel facts. On the one hand, with the arrest of a detainee on probable cause to believe that the detainee committed a criminal offense, "where a police officer has or should have doubts whether a detained suspect is in fact the person sought [for the commission of a crime], the officer must make immediate reasonable efforts to confirm the suspect's identity." *United States v. Valez*, 796 F.2d 24 (2d Cir. 1986) (citation and internal quotations omitted). Even at that, where an arrest is made pursuant to a validly obtained warrant, at least with respect to the initial arrest and detention, "there can be no claim for false arrest or unlawful imprisonment." *Jones v.*

---

if it was the reason for Simon's transport, it was "executed" the moment Simon was picked up at work. *C.f. Barr v. Abrams*, 810 F.2d 358, 360 (2d Cir. 1987) ("[Investigators] executed the warrant by arresting [defendant] at his office."). Moreover, many traditional arrest warrants come with the directive that the officer is commanded "to arrest and bring before a United States magistrate judge without unnecessary delay" the arrestee. *See* Form Number AO 442, Arrest Warrant. Had the "criminal suspect" arrestee been released without an appearance, there is no doubt that his entry into initial custody was as a result of the warrant execution. If anything, moreover, the testimony by the officers that the warrant was not "executed" is but further evidence of the differences understood by the law enforcement community concerning the nature, purpose and process of material witness warrants as opposed to ordinary arrest warrants. It underscores the importance of pre-existing guidance from "clearly established" law delineating the constitutional propriety of such processes, thus enabling a finder of fact to judge against that standard whether law enforcement officers and prosecutors obtaining and executing such warrants have acted in an objectively reasonable fashion.

*Trump*, 971 F. Supp. 783, 788 (S.D.N.Y. 1997), *aff'd*, No. 97-9017, 1998 WL 1967891 (2d Cir. Sept. 21, 1998) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118-119 (2d Cir. 1995)); *see also Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979) (Respondent stated "no claim under the United States Constitution" when "Respondent was . . . deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, . . . to the requirements of the Fourth Amendment."); *Johnson v. Darby*, 142 F. Supp. 3d 275, 279 (E.D.N.Y. 2015), *aff'd sub nom. Johnson v. Dobry*, 660 F. App'x 69, 71 (2d Cir. 2016) ("[The officer] was entitled to rely on the warrant unless he had been involved in obtaining it by fraud or it was invalid on its face.").

This latter constitutional guidance is important and, in fact, potentially dispositive, for regardless of the outcome of the search for "clearly established" law as to material witnesses, there is absolutely no basis to conclude that the qualified immunity saving officers from liability in the context of "criminal suspect" arrest warrants would not extend similar protection to those executing material witness arrest warrants. That quantum of qualified immunity certainly benefits defendants here in their initial arrest and "detention" of plaintiff, if that "detention" was pursuant to a validly obtained material witness warrant that actually named Simon as the subject. On that score, there can be no genuine dispute, in fact Simon appears to concede, that plaintiff's initial arrest pursuant to that warrant was a not a violation of then-existing clearly established law.[9]

---

[9]     Even if plaintiff were to contest her original arrest and "detention", she has produced not a scintilla of evidence indicating that her initial arrest and "detention" were anything other than an honest, understandable mistake. There was, plainly, no "knowing [violation of] the law" on ADA Longobardi's or the officers' part that would impede the application of qualified immunity to these actions. *See Malley*, 475 U.S. at 341. Nor, obviously was it "plainly incompetent" for these investigators to mistakenly believe that the elusive "Alexandra Griffin" was actually the

It bears emphasizing that in the absence of clearly established constitutional protections to be afforded to the subject of a material witness warrant, courts are not set totally adrift in determining whether qualified immunity shields law enforcement officers and prosecutors executing such warrants. Stated more particularly, although – given the differences in their nature, purpose and process – there is no reason to conclude that the qualified immunity protections afforded are *congruent* for officers executing material witness arrest warrants and "criminal suspect" arrest warrants, there is still no basis whatsoever to conclude that the protection of qualified immunity to be afforded to those executing a material witness arrest warrant should be any *less* than that afforded to those executing a "criminal suspect" warrant. Indeed, if anything, as will be discussed later, the flexible process and concomitant unfixed perimeter of reasonableness in the execution of material witness warrants suggest that the quantum of protection offered by qualified immunity is likely more expansive, that there is greater ground to support a finding of reasonableness.

Given that important premise, which recognizes a modicum of guidance to police officers, and reviewing judicial officers afterwards, provided by "criminal suspect" case law, such case law demonstrates considerable flexibility in situations where the detaining officials had reason to believe that a misidentification had occurred, and that the person detained pursuant to a validly obtained "criminal suspect" arrest warrant was not the person law enforcement officers intended to detain, that is, the person for whom they had probable cause to detain. *See Baker*, 443 U.S. at 143-45; *cf. Caceres v. Port Auth. of New York & New Jersey*, No. 06 CIV. 1558

---

similarly-named Alexina Simon who shared her residence. *Id.* at 341. It was, at worst, an honest error – the exact thing qualified immunity shields against. Moreover, the Second Circuit has already found that "[a]ny alleged misstatements by Longobardi in his application for the material witness warrant . . . cannot form the basis for liability." *Simon*, 727 F.3d at 172.

(JGK), 2008 WL 4386851, at *7 (S.D.N.Y. Sept. 24, 2008) (finding that *Baker* applies when the "warrant contained the name of the arrestee"). Case law established on this point emphasizes that any assessment of the conduct of the officers in such situations will be evaluated in the context of the steps taken when alerted to the misidentification, with a particularly heavy emphasis upon the amount of time taken to address and then correct the misidentification. *See Baker*, 443 U.S. at 145; *Gonzalez v. City of New York*, No. 98 CIV 6081 MBM, 2002 WL 252564, at *6 (S.D.N.Y. Feb. 21, 2002) (no violation for 24-day incarceration when without repeated protest), *aff'd*, 69 F. App'x 7 (2d Cir. 2003). Here, taking the facts in the light most favorable to Simon, she was detained, at most, for 16 hours (spread over two days) after it was determined that she was not the witness the prosecutor had originally intended to process as a material witness. *See* Dkt. No. 129 at 3; Simon Dep. at 71.

Nevertheless, it is necessary to come to grips with the reality that, as previewed above, and in the vacuum of case law charting a particular course for this very different kind of arrest warrant, prosecutors and law enforcement officers have come to handle material witness warrants in a qualitatively different manner than that applied to "criminal suspect" warrants. An assessment here of the reasonableness of the actions of the officers and prosecutor cannot be separated from the routine procedures that have grown up around the execution of material witness warrants in the absence of contrary case law guidance. *Cf. Hope v. Pelzer*, 536 U.S. 730, 741-42, 122 S. Ct. 2508, 2516, 153 L. Ed. 2d 666 (2002) (noting that a state regulation and a DOJ report inform what a reasonable officer should have known.). The local practice in New York essentially tracks federal practice and, given the practical difficulties presented in the obtaining and use of material witness testimony, federal law, 18 U.S.C. § 3144, allows latitude for federal prosecutors to delay the "release of a material witness . . . for a reasonable period of

time . . . ." *Cf. Awadallah*, 349 F.3d at 63 (material witness held for three days before judicial appearance). Defendants also proffer that it is the informal practice of New York City prosecutors and officers to "first see if the person [named in the material witness warrant] will cooperate" before formally executing it. Def. 56.1 Stmt. ¶¶ 78-80; Alegre Dep. at 146-47. Given this history and the absence of case law guidance to the contrary, reasonable officers and prosecutors could, at minimum, disagree over whether defendants' actions were compliant with professional norms in effect on August 11 and 12 2008 and, therefore, whether it was objectively reasonable for the officers to believe that their actions did not violate any clearly established right.[10] *See* 12/20/2016 Oral Arg. Tr. at 133 at 21-23.

Finally, given the relationship between Simon and the original subject of the warrant – *i.e.*, a mother and a daughter residing under the same roof – reasonable officers could disagree over whether probable cause existed to process plaintiff as a material witness, given that she, herself, possessed material information about the McKinnies incident, that she had learned from her daughter and could testify about before a grand jury, and that securing her presence may become impracticable if she were released without processing. *Cf. United States v. Feingold*, 416 F. Supp. 627, 628 (E.D.N.Y. 1976). And, after all, she was the one named in the warrant.

Plainly, "[a] material witness warrant must be based on probable cause, which . . . must be tested by two criteria: (1) that the testimony of a person is material and (2) that it may become impracticable to secure his presence by subpoena." *Id.* (citation and internal quotations omitted).

---

[10] While the Second Circuit made no finding as to the legality of the defendants' actions under federal or New York law, it observed that "[a] material witness warrant serves the purpose of securing a witness's presence at a trial or grand jury proceeding. It does not authorize a person's arrest and prolonged detention for purposes of investigative interrogation by the police or a prosecutor." *Simon*, 727 F.3d at 173-74. Powerfully, the Second Circuit cites no federal authority for this declaration of law, once again indicating the absence of clearly established law at the constitutional core of Simon's claims.

To that end, Simon testified at deposition that when asked about the McKinnies incident, she stated that she had knowledge of the investigation and that she was aware that McKinnies lived across the street. *See* Simon Dep. at 41. Simon, however, also testified that she told the officers that she had never talked to McKinnies directly about the incident at the center of the investigation, *see id.* at 42. While it may not have been the smoking gun the prosecutors and officers were seeking, they still may have been reasonable in their decision to put her before the grand jury – an investigatory body which, at least in New York, has the power to not only indict a person for an offense, but submit grand jury reports. *See* N.Y.C.P.L. § 190.85. The prosecutor and officers may have been reasonable in believing that Simon herself could be processed on the material witness warrant that named her, in line with the manner in which grand jury witnesses are ordinarily processed in the course of deciding whether, when and how to present that testimony, and at what reasonable point the witness should be brought before the court on the warrant, or released.[11]

Put in a nutshell, the law governing the application of qualified immunity demands a demonstration that, at the time of the incident, the officers had "fair warning" that their conduct was unconstitutional. *See Hope*, 536 U.S. at 741. No such warning was afforded defendants here since no law clearly established that the conduct in which defendants allegedly engaged was unconstitutional. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011) (finding that law was not clearly established since that, as of March 2003, "not a single judicial opinion had held that pretext could render an objectively reasonable arrest

---

[11] The reasonableness of this decision is undergirded by the fact that Simon could have testified to any information about the McKinnies incident that she had acquired from her daughter since hearsay is admissible before a grand jury. *See Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408-09, 100 L.Ed. 397 (1956).

pursuant to a material-witness warrant unconstitutional"). While a showing of an exact factually analogous precedent cannot be, and has not been, required of plaintiff before declaring that a right is sufficiently established for purposes of qualified immunity, *see Hope*, 536 U.S. at 741, especially given the qualitative difference in the nature and purpose of material witness warrants compared to "criminal suspect" warrants, no existing precedent clearly established the existence of a constitutional right (and corresponding duty) in this case regarding the arrest and processing of a material witness, pursuant to a validly obtained warrant. In fact, there is no essential dispute that the conduct targeted by plaintiff is the very common standard practice in such cases. It is hard to fathom, without particular guidance from case law, that police officers and prosecutors acting similarly could be acting in any fashion other than reasonably.[12]

Since the relevant inquiry is whether existing precedent placed the conclusion that officers and ADA Longobardi acted unreasonably in these circumstances "beyond debate[,]" *al-Kidd*, 563 U.S. at 741, and given the situation confronted by the defendants here – which at times feels like a newly discovered second act of *Who's on First?* – the motion for summary judgment

---

[12] Insightfully, a concurring opinion in the fairly recent case of *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011), observed that the federal material witness statute, which is similar to New York's, "might not provide for the issuance of warrants within the meaning of the Fourth Amendment's Warrant Clause" given the different standards governing their issuance, *i.e.*, probable cause that someone committed a crime, versus probable cause that testimony is material and the person is not susceptible to a subpoena. *See id.* at 745 (J. Kennedy, concurring). The opinion reasoned that "[i]f material witness warrants do not qualify as 'Warrants' under the Fourth Amendment, then material witness arrests might still be governed by the Fourth Amendment's separate reasonableness requirement for seizures of the person." *Id.* This observation does not change the outcome here. Quite to the contrary, the discussion further highlights the uncertain status of the law surrounding the appropriate process of material witness warrants, and the absence of clearly established law that would give guidance to officers and prosecutors securing them, executing them, and processing returns made on them.

on the basis of qualified immunity is granted.[13]

II. Simon's Fourth Amendment Rights

Since the Court has determined that the right at issue was not clearly established, it is no longer incumbent upon it to address whether there was a violation of Simon's Fourth Amendment rights, especially since the case at hand is "so factbound" that any decision would "provide[] little guidance for future cases." *Pearson*, 555 U.S. at 237. Accordingly, the Court declines to undertake such an analysis.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment on the ground of qualified immunity is granted.

The Clerk of Court is directed to enter judgment accordingly and to close the case.

So Ordered.

Dated: Brooklyn, New York
March 19, 2017

/s/ U.S.D.J. Eric N. Vitaliano

_____
ERIC N. VITALIANO
United States District Judge

---

[13] Since the case is disposed of on "clearly established" grounds, defendants' motion to strike Simon's late-filed *errata* sheet, Dkt. No. 125 at 14-18, request that the Court reject plaintiff's most recent Local Rule 56.1 Statement, Dkt. No. 131 at 1-4, and request that the Court disregard plaintiff's untimely argument regarding her false arrest claim, *id.* at 5, are academic.